[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-11000

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ANTONIO REID,
a.k.a. Antonia Reid,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 3:21-cr-00025-CAR-CHW-1

_____

Before JORDAN, ROSENBAUM, and LUCK, Circuit Judges.

PER CURIAM:

Antonio Reid appeals his 188-month prison sentence for possessing with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). He argues that the district court erroneously categorized him as a career offender under § 4B1.1 of the U.S. Sentencing Guidelines. In Reid's view, his prior Georgia convictions for sale of cocaine, possession with intent to distribute cocaine, and possession with intent to distribute marijuana are not "controlled substance offenses" under the guidelines because they involved drugs that were not defined as controlled substances under both state and federal law. After careful review, we affirm.[1]

## I.

The guidelines recommend higher sentences for defendants who qualify as "career offender[s]." *See* U.S.S.G. § 4B1.1(b). A defendant qualifies as a career offender when he has at least the prior felony convictions for a "crime of violence" or a "controlled substance offense," among other requirements. U.S.S.G. § 4B1.1(a). The guidelines define a "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a

_____

[1] We review *de novo* whether a prior conviction qualifies as a predicate offense under the career offender guideline. *United States v. Pridgeon*, 853 F.3d 1192, 1198 n.1 (11th Cir. 2017).

term exceeding one year, that prohibits . . . the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." *Id.* § 4B1.2(b)(1).

We use a "categorical approach" to determine whether a state conviction qualifies as a predicate controlled substance offense under the guidelines. *Hollis v. United States*, 958 F.3d 1120, 1123 (11th Cir. 2020). "Unless the least culpable conduct prohibited under the state law qualifies as a predicate controlled substance offense, the defendant's state conviction cannot be the basis of an enhancement under the guidelines, regardless of the actual conduct underlying the conviction." *United States v. Dubois*, 94 F.4th 1284, 1295 (11th Cir. 2024) (cleaned up).[2]

We recently held that "state law defines which drugs qualify as a 'controlled substance' if the prior conviction was under state law." *Id.* at 1296. Thus, we must "consult Georgia law to determine whether the substance that [Reid] trafficked is a 'controlled substance' under the guidelines." *Id.* at 1297. And, in doing so, we apply a "time-of-state-conviction rule," under which a "controlled substance" under § 4B1.2(b) "means a drug regulated by state law at the time of the conviction, even if it is not federally regulated,

---

[2] In January 2015, the Supreme Court vacated the judgment in *Dubois* for further consideration in light of *United States v. Rahimi*, 602 U.S. 680 (2024). We have since resolved the *Rahimi* issue on remand and reinstated our prior opinion as to the remaining issues. *See United States v. Dubois*, __ F.4th __, 2025 WL 1553843 (11th Cir. June 2, 2025).

and even if it is no longer regulated by the state at the time of federal sentencing." *Id.* at 1300.

## II.

Reid's presentence investigation report ("PSR") classified him as a career offender based on 2005 Georgia convictions for sale of cocaine, possession of cocaine with intent to distribute, and possession of marijuana with intent to distribute, and on a 2016 federal conviction for possession with intent to distribute cocaine and cocaine base. Reid does not dispute that his federal conviction qualifies as a controlled-substance offense, but he contends that none of his state convictions qualify. Reid is incorrect.

### A.  Marijuana Offense

Reid asserts that marijuana was not a controlled substance in Georgia. He cites a 2019 decision from the Georgia Court of Appeals, which held that the term "controlled substance" as defined by O.C.G.A. § 16-13-21(4) means a substance that was "listed as such in both Georgia and federal schedules." *C.W. v. Dep't of Hum. Servs.*, 836 S.E.2d 836, 837 (Ga. Ct. App. 2019). In *C.W.*, the court reasoned that, because marijuana was not listed on Georgia's drug schedules, a mother's use of marijuana while pregnant did not amount to prenatal abuse for using a "controlled substance." *Id.*

Reid's reliance on *C.W.* is misplaced. *C.W.* was decided several years before our decision in *Dubois*, which is binding on us as a panel, and there is "no exception . . . where the prior panel failed to consider arguments raised before a later panel." *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) ("Under our prior panel

precedent rule, we are bound to follow a prior panel's holding unless and until it is overruled or undermined to the point of abrogation by an opinion of the Supreme Court or of this Court sitting *en banc*."). In *Dubois*, we held that a Georgia conviction for possession with intent to distribute marijuana counted as a "controlled substance offense" under the guidelines because "Georgia law regulated marijuana—including hemp—at the time of [the defendant's] 2013 conviction." 94 F.4th at 1300. Reid offers no grounds to distinguish *Dubois* or to explain why it's not binding here.

At the time of Reid's 2005 conviction, as in *Dubois*, Georgia law made it "unlawful for any person to . . . possess with intent to distribute marijuana." *See* O.C.G.A. § 16-13-30(j)(1). While the definition of "marijuana" at the time included hemp, which has now been delisted both federally and in Georgia, that fact does not prevent Reid's conviction from counting as a predicate controlled substance offense. *See* O.C.G.A. § 16-13-21(16) (2005). That's because "Georgia law regulated marijuana—including hemp—at the time of [Reid's 2005] conviction." *Dubois*, 94 F.4th at 1300.

What's more, nothing the court of appeals said in *C.W.* is inconsistent with or undermines that holding. *Dubois* did not rely on the definition of "controlled substance" in O.C.G.A. § 16-13-21. While we look to state law, the question is whether "the substance that [the defendant] trafficked is a 'controlled substance' *under the guidelines*." *Dubois*, 94 F.4th at 1297 (emphasis added). That a state definition of "controlled substance" excludes marijuana does not necessarily mean that marijuana is not a "controlled substance" for

purposes of § 4B1.2's definition.  As *Dubois* makes clear, Georgia law criminalized the possession with intent to distribute marijuana, including hemp, at the time of his conviction.  *Id.* at 1300.  Because marijuana was "a drug regulated by state law at the time of the conviction," Reid's 2005 marijuana conviction qualifies as a controlled-substance offense under the guidelines.  *Id.*

Reid's 2005 marijuana conviction, combined with his unchallenged 2014 federal conviction, means that he had at least two prior convictions for controlled-substance offenses.  So the district court did not err in classifying Reid as a career offender.  In any case, his cocaine offenses would count as well, as we now explain.

## B.  *Cocaine Offenses*

Echoing his marijuana arguments, Reid maintains that, because Georgia law defines "controlled substance" as a substance appearing in both federal and state drug schedules, we must do the "same sort of federal comparison" that we rejected in *Dubois* for state-law offenses.  94 F.4th at 1296.  And he contends that, because Georgia defined cocaine more broadly than the federal government—to include "conformational isomers" of cocaine and not just "optical and geometric isomers"—Georgia's broader definition cannot qualify under the categorical approach.

Reid's argument is self-refuting.  Assuming without deciding that a "controlled substance" under Georgia law must appear on both state and federal drug schedules, Reid could not have been convicted of selling or possessing with intent to distribute conformational isomers of cocaine.  Because conformational isomers,

under Reid's theory, are not included on the federal drug schedules, they categorically would not qualify as "controlled substances" under O.C.G.A. § 16-13-21(4).  So conformational isomers could not sustain a conviction for "sell[ing] or possess[ing] with intent to distribute any controlled substance."  O.C.G.A. § 16-13-30(b); *see C.W.,* 836 S.E.2d at 837.  As a result, we need not consider that possibility when assessing the least culpable conduct prohibited under the statute.  *See Dubois*, 94 F.4th at 1295.

In any case, *Dubois* instructs that a "controlled substance" under § 4B1.2(b) "means a drug regulated by state law at the time of the conviction, even if it is not federally regulated."  *Id.* at 1300. And here, it's undisputed that Georgia's drug schedules included cocaine and all its isomers at the time of Reid's conviction, even if federal law did not.  So Reid's cocaine convictions qualify as controlled-substances offenses under *Dubois*, regardless of any mismatch between the state and federal definitions of "cocaine."  *See id.*

For these reasons, the district court did not err in classifying Reid as a career offender under the sentencing guidelines.  We affirm his sentence.

**AFFIRMED.**